We move to our final case of the morning, Appeal 22-3155, United States v. Brandon Ellis. Mr. Hillis, we will begin with you. May it please the court, counsel, my name is Daniel Hillis, I'm with the Federal Public Defender's Office. I represent Mr. Ellis on this appeal. It's a single issue, and it's a very straightforward one. The District Court, in pronouncing sentence, relied on errant, incorrect information, in our opinion, and that is because the District Court termed possession of a firearm as a violent crime. Judge Scudder, you caught my ear earlier today when you noted in a prior case that possession of a firearm is not a violent offense. That is as clear as can be here. We have the elements of the offense that we could easily look to. We can also look to the Eighth Circuit's decision in Roberts to say that it's a status offense, much like you termed it earlier. So that was simply an incorrect statement of the law. Why is that important? It's because here, in pronouncing sentence, the judge relied on that determination that it's a violent offense to vary upward by 54 months. The guideline range in this case was 24 to 30 months. The judge did not look kindly on having the firearm. Fair game. Judges are entitled to their own sentencing philosophies. They can engage the facts as they fall before them, but they're not free to re-term the law to call something a violent offense when it, in fact, isn't. And so that is the difficulty that we face here. So you're relying on the court's comment that you can't keep committing the same violent crime. That's the basis. And do you agree if the violent part were taken out, if the court had just said you can't keep committing the same crime, that you wouldn't be here? Sure. Much like I would in a civil case if somebody said I'm not giving you the job because you're a woman. If you take that, you know, because you're a woman part out, then you don't have anything to complain about or because of your ethnicity, etc. But we cannot take from the record the thing that is the grievous instance here that allows for the relief that we seek, Judge. What's your best argument, Mr. Hillis? You know what your adversaries on the other side say about reading the transcript in its the risks of violence and the problems that guns, you know, pose on the streets of a city like Chicago. I think the district court did both things, Judge. So the judge was appropriately considering the dangers that firearms present. So if I had a firearm and I brandished it, for instance, then it would be saying to a person you need to think because now you're provoking violent responses from other people who might have guns, from the police, etc. But that's not what happened here. We look at paragraph six in the PSR and it says that the glimpse of the firearm was caught mostly because he lifted up his shirt or something to kind of then... This is another one of those pod cases, right? Pod camera cases, whatever we call them. Not litigated, so not pressed. And so we're looking just at what the facts are known to the judge in pronouncing sentence. And it wasn't that he did anything to provoke violence. Merely having a gun is not anything that poses violence. Otherwise, the whole Second Amendment may be fair game on this, right? But you're allowed to, and perhaps even as a felon, allowed to have a firearm and issue for a different day under Bruin. But nevertheless, we're looking at what the facts are. Paragraph six of the PSR, a glimpse of the firearm was caught. It was in his waistband. He did not retrieve it. He did not motion towards it. He didn't do anything to suggest he was going to be imminently engaging in any violent conduct. He simply possessed a firearm. Back to Roberts. That is not violent conduct. Therefore, it is wrong to term this a violent crime. And we look at appendix pages 24 and 25, and we don't get to separate out the parts that we don't like any more than I would like to be able to do that in any criminal case where the language disadvantages me. I have to take it as a whole as I'm doing here. It's not a stray remark because it is something that is central to the judge's decision in affecting what the sentence ultimately is in this case. Now all of that being said, I don't want to miss the chance to address the court's question, should it have any, about standard of review because we believe very definitely that the standard of review here is de novo, and it's for a couple of simple reasons. One is to make a determination is not something that requires a defense attorney to make an objection to. That is properly deemed an exception. It seems that we addressed this in the application of Rule 51 in the U.S. v. Wood case. We've addressed it numerous times, and therefore I'm not warm to the idea that this is somehow a waiver or requires forfeiture analysis. It doesn't. Shaw's recent instance where the Court of Appeals has said this is not something that requires plain air review. This is something where the judge makes the mistake, we are left then to argue about its effect. I don't think there's any question you're right about that. Good. I don't. I'm surprised. I mean, I've seen this a couple of times from the government. I mean, we're going to ask about it here in a second, but I mean, I'm surprised they're arguing that. I don't fault the government for making arguments that it thinks it can get traction on judge. There's sometimes we win things, sometimes we lose things. Wood is as clear as day on this. Thank you. Because otherwise, the judge is imposing sentence, and you'd have to say, hold on. I know how judges would react to that. So the one, there's a member of the panel that drafted Wood for the court. The one point in Wood that is fair is that the best practice is to raise that comment on the spot. So it's dealt with. Right? That language is in there, but we're clear that you don't have to interrupt, and it's subsumed within the sentence, and therefore subsumed within the judgment, and therefore you can argue it on appeal. That's our take on it. Yeah. I don't have anything to add to that. I think that's correct. I think that's been correct since Bartlett. I think that's also reflected in the federal rules. Right. Nevertheless, if the court did have questions, and it seems that you don't, so I'm happy . . . You know, let me ask you one more question. I don't want to, I don't want to hit this issue too hard, but you know our case law as well as anybody does, Mr. Hillis. Are we, is our case law unclear on this in your view? Unclear . . . On this Wood-Shaw point? I don't think so. I think that if we look at what Bartlett says, we have our answer. I think if we consider what Shaw recently said, again, just reiterating what this is. So we have instances, and Miller's another one, where once the judge makes a misstatement, we don't expect people to interrupt judges when the judge has made his or her determination. We accept what it is, and we grumble about it on the appeal. So today we're grumbling. But as a final matter, we again just point to what legal authority is on this. So we have a due process right to be sentenced on the basis of accurate information, and that's not something to take lightly here. So if due process says that we get that, and if the Supreme Court has made that clear in the Tucker and Townsend line of cases, this Court has made that clear in U.S. ex-well rather, versus Lane, and the list goes on. We just have to look to see, did the district court rely on the incorrect information in the pronouncement of sentence? We don't have to trace back very far. We look at pages 24 and 25. The judge says, this is a violent crime. We know it's not. And then the judge gives the sentence that he does, and it's an enormous upward variance. He wouldn't say it if it didn't affect his penal philosophy and shape the sentence that would be ultimately imposed. So with that, I have nothing further. Thank you, Mr. Hillis. We'll now move to Mr. Didwaniya on behalf of the government. May it please the Court, Fikash Didwaniya on behalf of the United States. So let me start with the standard of review because I know the judges have some questions about that. When we look at Miller and we look at Shaw, one of the things that comes out is one of the best practices is for the district court to ask at the end of pronouncing the sentence whether there's anything that counsel would like to address and the objections or issues that they would like to raise. And here, I would just implore you to look. The district court judge here asked numerous times of both attorneys was there anything to address. And in fact, both sides did raise issues with the sentence that the district court had announced. The government raised an issue with the conditions of supervised release and then the defendant raised several issues including whether the district court should have taken into account the time that he spent in state custody. So I don't think the suggestion here is that the defendant should stop the district court, interrupt, and erase the issue. But at the end, it would have been very possible for the defendant to say, judge, you mentioned this was a violent crime. How do you get around Wood though? Where something similar happened and the district court said, is there anything else I need to address? And while I agree with you, it certainly would have been the better practice to say, well, you said a violent crime. We were very clear at Wood that that alone, is there anything else, is not sufficient. And Your Honor, we relied on Miller. And I think the facts in Miller are pretty close to what happened here. We're in Miller. The judge made a statement during pronouncing the sentence about the hypothetical criminal history category. And then the court found that plenary review applied. But I guess I would just end that by saying, I don't think the standard of review matters here. Plenary review or de novo, I think we get to the same result. And so I'm not sure it's necessarily an issue that needs to be decided in this case. No. I really appreciate your candor on this. I think, I thought you might say Miller. And I wonder if there, and you're saying Miller in complete good faith. It's out there. It's circuit precedent, all that. And I wonder if there's just daylight in our case law on this. There's just some ambiguity. Because, you know, Mr. Hillis, you know the cases he's pointing to. We just haven't been as clear as we could be on this. That's our problem. That's not of your making. And you're free to address any issues, obviously, as you write the opinion, Your Honor. But again, it's not necessarily something that needs to be clarified in this case. Because I don't think it makes a difference here. So going to the argument about the two words, violent crime, the district court did not commit an error by using those two words in a six-page explanation of the sentence that it imposed. And, you know, when taken to isolation, maybe those two words weren't the most artfully worded. But Judge Scudder, as you mentioned, when you're looking at the totality of the context of sentencing hearing, what it reveals is that the judge was talking about the danger and the substantial risk of violence that occurs when felons illegally possess guns. The district court specifically said, you know, the violence that is brought on by the use of these illegally possessed guns by felons and the need to deter such conduct. That's on page 24 of the sentencing transcript. I believe it starts at line 5. And here, this notion that maybe the district court erred and thought that violence was an element of the offense is just not supported by anywhere in the record. It wasn't in the plea agreement. It wasn't part of the plea colloquy. It wasn't in the government's version of the offense. It wasn't in the pre-sentence investigation report. It wasn't in the sentencing memoranda. And it wasn't presented by the counsel at argument. No one here argued that violence or violent act was an element of the offense. And Mr. Hiller mentioned that, you know, provoking violence or committing a violent act are not parts of the offense. We're not at issue here. And again, nobody suggested that the defendant here actually provoked violence or committed a violent act. So the notion that the judge somehow, using the words violent crime, assumed that a 922G1 offense has as an element of the offense violence is just not plausible in light of the record. And the second point I would make is, you know, even if the court were to agree with defendant's interpretation of those two words, they were not the driving factor for the sentence here. So Mr. Hiller mentioned, you know, they were essential to the district court decision. But in fact, the district court explained what was essential to his decision. It noted what, quote, require a sentence that is above the guideline range in this case where the defendant's, quote, refusal to change his behavior in the face of two prior convictions and, quote, the danger he placed the police officers in and the rest of the public. That was at page 26 of the transcript. And the court elaborated on that danger, not only the defendant possessing the gun in a when he was approached by the police. And it noted multiple times the defendant's criminal history, how he had been convicted of illegal gun possession twice before and the need to deter that conduct. And it finally noted the defendant's mitigation argument. The defendant's history was not particularly mitigating. He had positive family and childhood experiences. This was a fairly hefty sentence, almost three times above the high end of the guidelines, not what we usually see. It was, Judge, and as Mr. Hiller mentioned, the judges are entitled to have their sentencing philosophies. And, of course, the substantive reasonableness of the sentence is not challenged on this. Correct. I was surprised Mr. Hillis didn't make that argument. I would just suggest, Judge, that although a hefty sentence, the district court did provide a lengthy, thoughtful explanation for the sentence that it did impose. So, you know, the district court did not commit any error or any misunderstanding, misinformation, about the nature of the offense here. And even if it did, it did not rely on those two words in imposing the sentence. And so, therefore, we ask that the district court's judgment and sentence be affirmed. Thank you very much, Mr. Dudwania. We'll now move back to Mr. Hillis for any rebuttal. We try never to surprise the court of appeals by making one argument or not making another. And given the absolute dearth of success that anybody's ever had making the substantive reasonableness, thus my silence. I understand why. I'm not criticizing you for that at all. But it was a high sentence. Yes, yes, it was. And Judge Guzman has given high sentences on these. And we don't have many ways to attack his decisions, but today we do. And if we had clear indication from the court that it wishes to have opportunities to make substantive reasonableness arguments, by all means, include that language in whatever you've got. We'd be glad to read that. But we do have some things to complain about a little bit for what the government said, and Mr. Dudwania does a terrific job. But it doesn't have to be the driving factor for the imposition of sentence. We just need it to be incorrect and to be relied upon. How do we know that it's incorrect? Because 922G1 is not a violent offense. How do we know it's relied upon? Because it's on the page of the transcript. He cited from page 26 of the transcript where the judge is giving his final imposition of sentence, or rather a statement about what it should be. We'd have to look back very far to page 25 to say where he called it a violent offense. It is not. So it's an incorrect statement of law. It's inaccurate. It's relied upon, obviously. And it is a central feature because if we're looking at somebody who's a recidivist, and our primary concerns are not just that he's a recidivist but the types of crime that he commits, and you say you can't keep committing violent crimes or offenses of this type, what are his offenses of this type? It's the possession of the firearm, and it's not violent. So that's a problem. What to do about when the judge makes a misstatement? If we had some rapid-fire arrangement where we can immediately request from the court reporter something that caught our ear, we know the judge said something wrong, and we get the transcript, we can tap the brakes and say a very more thorough response to the judge's question. Did I miss anything? Is there anything that you need to tell me? We don't really get to interrupt the proceeding and say, could the court reporter please read back the last three pages of what the judge had said so I can double-check to make sure. This is all done on the fly. It didn't catch anybody's ear, but we know today by looking at the transcript for the benefit of that, that this was an incorrect statement. We don't need more than that, and we don't need to point to anything else the judge said that was right. We just have to focus on something the judge did was wrong because that's the due process problem that presents itself here in this case. And so that's all I have to say unless the court has any further questions. We think that Tucker and Townsend light the way here. Due process, while it's not always the thing that courts want to hear as a constitutional matter, when it does present grounds for relief, we hope that it will be given. Thank you very much, Mr. Hillis. Thank you, Mr. DiGuania. The case will be taken to our advisement. That will complete our hearing.